WILLIAM C. HOLWAY, and others,

*vs.*

PROPRIETORS OF MACHIAS BOOM.

SAME *vs.* SAME.

Washington.    Opinion March 30, 1897.

*Negligence.   Boom.*

In an action to recover damages by loss of the plaintiffs' logs by reason of a defective boom belonging to the defendant, it is incumbent on the plaintiffs to prove that the defendant corporation did not exercise reasonable precaution or due care and diligence either in the construction and repair, or in the management, of the boom.

Where the evidence satisfactorily shows that the defendant company failed to perform this reasonable obligation by reason of a radical defect in the method of constructing the boom and for want of proper inspection and repair of its chain, *held;* that it is the opinion of the court that the verdict should stand.

ON MOTION BY DEFENDANT.

The case appears in the opinion.

*H. M. Heath and C. L. Andrews*, for plaintiffs.
*Charles Sargent*, for defendant.

SITTING:   PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, STROUT, JJ.

WHITEHOUSE, J.    A large number of logs owned by the plaintiffs in these two cases were swept away and lost by reason of the breaking of the boom maintained by the defendant corporation across Machias river.    The jury found that the aggregate damage thus sustained, including the expense of recovering a portion of the logs that escaped, was $2197.50 and by agreement between the plaintiffs in the two cases, this sum was equally divided between them and a verdict rendered for $1098.75 in each case.    The defendant moves to have these verdicts set aside as against law and evidence.

After a careful and patient examination of all the evidence reported it is the opinion of the court that this motion must be overruled. It not only fails to appear that the verdicts were unmistakably wrong, but it affirmatively appears that they were clearly right.

The boom in question extended from shore to shore of Machias river, a distance of three hundred and twenty-five feet, and was hung by chains below the piers, instead of being buttressed against them. On the 10th of April, 1895, the chain stretched across the southern, or Dublin-gap, was broken by the pressure of the logs and ice, and the boom carried away.

As originally built this gap appears to have been constructed according to an approved design and upon correct mechanical principles. On the northerly side of the gap the boom-stick was fastened to the pier, and both the boom-stick and the gap-piece held in position by means of three chains running diagonally from the corner of the pier to the boom-stick. On the southerly side of this gap the shore end of the boom-stick was buttressed against a substantial pier, and by the aid of a second pier farther up the river and three chains extending diagonally therefrom to the boom-stick, the gap-piece and boom-stick on the southerly side were securely held in a fixed position. A chain was also drawn over the platform of the gap itself and attached to the gap-pieces on either side. Thus the boom was held in a rigid condition its entire length, with the pressure distributed among eight or more bearings, and the gap-chain subjected to comparatively little strain.

But at the time of the breaking in question the conditions on the southerly side were entirely different. The lower pier to which the shore end of the boom-stick had formerly been fastened had rotted down and been abandoned, and in readjusting the boom on this side of the gap a fatal change was made in the method of construction. The boom-stick was used as a guy extending diagonally from the only remaining pier on the shore, up river, to the southerly gap-piece and three chains ran from the upper corner of that pier to the gap-piece. Thus the southerly gap-piece and the outer end of the boom-stick attached to it were only held in

position by means of the chain drawn over the platform of the gap, and this gap-chain was obviously the only power, at that time, to resist the constant pressure shoreward of the logs and ice against the southerly gap-piece and boom-stick. With such a structure several chains of extraordinary size and strength would have been required to withstand the pressure which might reasonably have been expected to result from the action of logs and ice at ordinary spring freshets. Instead of such means, however, only one gap-chain was stretched over the platform and this chain, composed in part of an old ship's cable, had been in use so long that its strength was nearly gone. A section of it was exhibited for the inspection of the court and it was manifestly unsuitable and insufficient for the purpose.

Under these circumstances that happened on the tenth of April, 1895, which might reasonably have been expected to happen under the existing conditions which do not appear to have been extraordinary in a spring freshet. The old gap-chain of greatly impaired strength broke and parted under the pressure of logs and ice ; the other chains then gave away in rapid succession, the boom-sticks swung around and the logs escaped.

The learned counsel for the defendant insists, however, that there is no evidence that the gap-chain parted first.

In answer to the question by the court : " Where did the boom part ?" Daniel McLaughlin testified unequivocally : " Parted in the middle of the gap ;" and in cross-examination the fact is repeated and emphasized that the gap covered by the chain broke and separated, and that this was the first part to break. He was an eye witness to the disaster, having a plain view of the boom and of Dublin-gap. His testimony is corroborated by Hannah Reynolds, who also witnessed the occurrence, and there is no evidence to contradict the direct testimony of these two witnesses. On the contrary all of the circumstances and results tend to confirm their evidence.

It was incumbent on the plaintiffs to prove that the defendant corporation did not exercise reasonable precaution or due care and diligence either in the construction and repair or in the manage-

ment of the boom. The evidence satisfactorily shows that the defendant failed to perform this reasonable obligation by reason of a radical defect in the method of constructing the boom and for want of proper inspection and repair of the gap-chain as already shown.

No question is made respecting the amount of damages awarded and there seems to be sufficient evidence on that branch of the case also to justify the verdict of the jury.

*Motion overruled.*